MICHIGAN IDAHO LUMBER COMPANY, a Corporation, v. NORTHERN FIRE & MARINE INSURANCE COMPANY, a Corporation.

(160 N. W. 130.)

**Fire insurance policy — loss under — settlement and adjustment of loss — amount — action to recover — complaint in — not on policy.**

1. Complaint examined, and *held* to state a cause of action upon a settlement and adjustment of a fire insurance claim rather than upon the fire insurance policy itself.

**General agent — draft given by — in payment of amount of adjustment — insurance company — authority of — delivery of draft — implied authority — secret instructions — unknown to payee.**

2. A general agent who has been given a draft with which to pay for the amount determined upon in a settlement and adjustment which has been made by him under the authority of an insurance company has implied authority to deliver the same, and his principal will be bound by a delivery, even though, prior to the same, the agent was instructed to hold up the draft, but such secret instructions were not known to the payee.

**General agent — instructions to — powers — limitations on — not disclosed — apparent powers — not affected by — authority — scope of — insurance company — general agent of — implied authority — apparent authority — permitted by principal.**

3. Instructions to or limitations on the powers of a general agent which are not disclosed cannot be permitted to affect apparent powers, and although the agent violates his instructions or exceeds the limits stated to his authority, he will yet bind his principal to a third person if his acts are within the scope of authority which the principal has caused or permitted him to appear to possess. A general agent of an insurance company has the implied authority to write temporary policies, and where he agrees that a loss will be covered pending negotiations for a larger policy, his principal will be bound thereby.

**Insurance company — general agent — statements — in connection with business — risk — covered — promises of — to insured.**

4. Where a general agent of an insurance company states that he will hold a risk "covered," he will be presumed to mean that the insured is at the present time protected against loss, and not merely that he will make a notation and at some future date issue a policy.

**Loss by fire — adjustment — specified sum — contract to pay — warranty in policy — waiver of — fraud — mistake of fact — mutual mistake — as to law.**

5. A settlement and contract to pay a specified sum on account of a loss operates as a waiver of any warranty in an insurance policy, unless such settlement was procured by fraud or was the result of a mistake of fact or of a mutual mistake as to the law.

**Insurance company — claim against — for loss — examination by company — settlement without — deemed to be waived — fraud — absence of — breach of warranty in policy — cannot avail itself of — want of knowledge.**

6. When a claim is made against an insurance company for a loss, the company is required to ascertain the facts as to any breach of warranty, and if it sees fit to pay the claim or to compromise it without examination, it must be deemed to have waived it, and in the absence of fraud it cannot afterwards avail itself of the breach, and it cannot urge payment or settlement by mistake on account of want of knowledge of such breach.

**General agent — adjuster — facts known to — known to their company — deemed to be.**

7. Facts which were known to the general agent of an insurance company and to its adjuster at the time of adjusting a loss will be deemed to have been known to the insurance company.

**Company — defects — deemed to have known — before settlement — evidence.**

8. Evidence examined, and the defendant company *held* to have actually known of defects complained of before settlement made.

**Loss — adjusted — insurance company — policy holder — between — recovery — action for — upon new promise — not on policy.**

9. Where a loss has been adjusted between an insurance company and a policy holder, such adjustment is a new and independent agreement; and the action for the recovery of the adjusted loss is a suit, not upon the policy, but upon the new promise or contract.

Opinion filed October 21, 1916.

Action to recover for a fire insurance loss.

Appeal from District Court of Grand Forks County, *Chas. M. Cooley,* J.

Judgment for plaintiff. Defendant appeals.

Affirmed.

Statement of facts by BRUCE, J.

This is an appeal from an order of the district court denying the defendant and appellants motion for judgment *non obstante veredicto* or in the alternative for a new trial, and which motion had been made after a verdict had been directed for the plaintiff. The claim arises out of a fire loss. The action was brought after the dishonoring by the defendant company of a draft which was given in settlement of the claim and in furtherance of an adjustment which had been made by its general agents and a hired adjuster.

The defense was that the draft was executed and delivered by mistake, and was procured by the plaintiff wrongfully and unlawfully; that the policy of insurance was not issued by the plaintiff at all, but to "John W. Prestel, J. T. Crosby, and J. S. Crosby, trustees, as their interests may appear;" that the defendant insurance company had never consented to the transfer of the policy to the plaintiff; that the policy in any event became invalid and void by reason of the fact that at the time of its issuance the mill property had been closed for two years, and was closed at the time of the loss; that an ill feeling existed between the community and the mill owners, which facts rendered the risk hazardous, and that these matters had been concealed from the defendant;

that at no time during the issuance of the policy were proper watchmen employed as required by the policy; that the premises were allowed to remain idle while the policy was in force without the consent of the defendant; that the mill was not on ground owned in fee by the plaintiff; that the said plaintiff did not state truly its interest in the premises, and by its proof of loss described said policy as issued to John W. Prestel, J. T. Crosby, and J. S. Crosby, trustees, and also stated in said proof of loss that the policy had been sold to the plaintiff since the issuance of the policy; that the plaintiff had not used reasonable means to save the property at the time of the fire; that proper proofs of loss had not been furnished and within the time required. There was also an offer to return and to pay into the court the amount of the premium.

On February 27, 1914, a policy of fire insurance was issued by the defendant company to John W. Prestel, J. T. Crosby, and J. S. Crosby, trustees, as their interest might appear, for the sum of five thousand dollars ($5,000), and for a term of one year. This policy was issued by Douglas Bros. & Rice, insurance brokers, with offices in Chicago, Illinois. The policy was a prorate of fifteen thousand dollars ($15,000), total insurance on buildings, machinery, and stock of a sawmill. Douglas Bros. & Rice had a general agency contract with the defendant company. Charles A. Dewing, of Kalamazoo, Michigan, was the president of the Michigan Idaho Lumber Company, and J. Stewart Crosby was the vice president. The plaintiff corporation was organized about February 25, 1913. It had delivered to it deeds to the sawmill property at Payette, Idaho, from and through J. W. Prestel, J. S. Crosby, and J. T. Crosby, trustees on October 23, 1913. Mr. Dewing, the president of the company, testified that at the time he purchased the property there was fire insurance upon the premises in other companies than the defendant, and all running to John W. Prestel, J. T. Crosby, and J. S. Crosby, trustees, and that these policies were turned over to the plaintiff corporation when the purchase was made, though they were not assigned, and that they were continued in the form in which they were originally written. On June 16, 1913, the plaintiff corporation gave a trust deed of the premises to the Continental and Commercial Trust & Savings Bank. This trust deed was recorded and was unsatisfied at the time of the fire though it was practically paid. Mr. Charles H. Garrett of Kalamazoo, Michigan, is a fire underwriter and acted as the agent of

the plaintiff corporation in securing the insurance. On February 21, 1914, and six days before the issuance of the policy, Garrett wrote Rice a personal letter inclosing a policy of fire insurance in a Pennsylvania company in amount twenty five hundred dollars ($2,500), and running to J. W. Prestel, J. T. Crosby, and J. S. Crosby, trustees, and asked Rice if he could take care of a line of ten or twelve thousand dollars, expiring February 28th, concurrent with the inclosed policy, and stated that the property was largely owned by Dewing & Sons, of Kalamazoo, Michigan. On February 23, 1914, Rice wrote Garrett that they would take care of a line of ten thousand on the risk involved, and that five thousand would be placed in the Central National and five thousand in the defendant company. On February 24, 1914, Garrett wrote Rice, suggesting that they bind the insurance and carry it till the 1st of March and then date the policy from March 1st at 3 per cent. On February 25, 1914, Douglas Brothers & Rice answered that they would do so. On February 26, 1914, Garrett wrote to Rice that he did not desire the binder to be issued, but to date the policies from March 1st. On February 28, 1914, Garrett wrote Rice acknowledging receipt of two insurance policies, meaning the Central National and the defendant company policies, and in such letter stated that Mr. Dewing (the president of the plaintiff company) desired to remodel the form of the insurance as it did not cover in just the way he desired. There then followed a long-distance telephone concerning the risk, but in which nothing was said about the name of the assured, although Garrett informed Rice that he was sending him a policy that would contain the names of the parties and the necessary information. The policy of the defendant company, and which was issued in the names of John W. Prestal, J. T. Crosby, and J. S. Crosby, trustees, as their interest might appear, was delivered by Garrett to Dewing, the president of the plaintiff company, about the middle of March, and there is no evidence that Dewing complained of the names of the parties inserted therein. The memorandum application in the office of Douglas Brothers & Rice show Prestel et al. as the assured, and this application is signed by Garrett as broker. On March 21, 1914, Garrett wrote to Douglas Brothers & Rice, stating that the policies had been sent to them covering the Idaho plant; that the incorporated name of this company now is the Michigan Idaho Lumber Company, and requested them to attach riders to the

*three policies, acknowledging the change in title and ownership.* This letter is as follows:

"Please note that the three policies you have sent us covering on the Idaho plant at Fayette, the *incorporated name of this property now is the Michigan Idaho Lumber Company, Inc.* Will you kindly send us riders to be attached to the three policies acknowledging the change in title and ownership, and we will see to it that the said riders are properly attached to the said policies, which are Central National No. 635,762, Northern Fire No. 33,847, and Russian Transport No. 20,494. The policies are still here in our office. We are getting the new policies and figures in shape, as Mr. Dewing desires to have a new policy form and increase the insurance somewhat. These forms are now in parts being made up, and, as soon as they are in order, they will be sent to you for consideration and approval."

No such riders, however, were ever attached to the policy. On April 20, 1914, Garrett wrote Rice inclosing policy forms for the Michigan Idaho Lumber Company, and stated in the letter that they had been quoted a rate of 2½ per cent; that they desired insurance written on the mill and machinery in the sum of seventeen thousand six hundred dollars ($17,600), and that the present policies would be returned and canceled upon the receipt of the new policies. On April 22, 1914, Rice wrote Garrett, stating that he could probably take care of the risk at 3 per cent, and that *they were holding the risk covered,* awaiting advices from Garrett as to whether the assured would agree to pay the 3 per cent. On April 28, 1914, Garrett wrote Douglas Brothers & Rice concerning a statement sent for the premium, and said in the letter that the policy was canceled and that Douglas Brothers & Rice were holding the new printed forms, and asked them to send a credit memorandum in order that they might take up the policy with Mr. Dewing and return it to Douglas Brothers & Rice, and asking that in the meantime Douglas Brothers & Rice send them something to *show Mr. Dewing for the binder under the new form and insurance taken.* On April 29, 1914, Rice wrote Garrett in reply to his letter of April 28th, wherein he stated that the entire line had been taken care of May 1st, and policies would go forward on the next day. On April 29, 1914, early in the morning the sawmill building and plant and machinery therein sustained a loss by fire of an incendiary origin.

The notice of loss sent to the defendant company by Douglas Brothers & Rice gave the name of the assured as John Prestel et al. On June 27, 1914, Rice wrote Garrett, stating that the premium on the policy should be paid, and that if he should report the fact to the New York office, that the premium had not been paid, it would have a material effect on them as to what their attitude might be. On July 3, 1914, Garrett wrote Rice a personal letter telling about the interview with Mr. Dewing, saying that he should not ask him for money for premiums at this time, and telling Rice that Dewing and his associates controlled a large volume of business; that he stood to lose a large volume of business if Dewing got the worst of it; that if this fire was adjusted he, Rice, would be taken care of with business, and that he would be willing that they should deduct the amount of the premiums out of any settlements that might be made. On July 18, 1914, Rice *wrote Garrett that they had deducted the premium out of the general statement of premiums due by deducting the same from a draft received from the Anglo-American Reinsurance Company.* On August 4th, Rice wrote Garrett acknowledging letter written August 1st by Garrett to Rice, and returning two policies that were written May 1st. On August Garrett wrote Douglas Brothers & Rice, stating that it would be all right to cancel the policies written on May 1st.

After the loss by fire Douglas Brothers & Rice arranged for the adjustment of the loss, and secured the firm of Wagner & Glidden for this purpose, Glidden then proceeded to the adjustment and referred the matter to one Almond J. Hall. Hall visited the premises and on or about June 16, 1914, made his report to Wagner & Glidden. He testified that he was not supposed to adjust the loss, only to investigate. Mr. Glidden, thereafter having received the reports from Mr. Hall, took up the matter with Mr. Dewing, and testified that, *after he consulted with Mr. Rice, he was instructed to admit liability and accept proof of loss from the assured.* Proofs of loss were signed July 9, 1914, claiming a total loss of two thousand eight hundred fifty seven and 14/100 dollars. The proofs of loss were made out with the assured as John W. Prestel et al., and Mr. Dewing in the proofs made a sworn statement that no change had taken place in the title except that *the property was sold to the Michigan Idaho Lumber Company.* On July

13, 1914, Rice sent the proofs to the defendant company with the following letter:

"We beg to hand you herewith proof of loss under the above claim for $2,857.14, together with adjuster's letter and bill amounting to $27.93, all of which we trust you will find in order. We have also made up reinsurance proofs for the Equity & People's Fire Insurance Company, for their proportion of this loss, which we also inclose herewith, and if you will kindly complete and have them accompany your draft in payment of this claim, we will collect this proportion from the companies for you."

The adjuster's letter referred to was as follows:

"Inclosed herein find proofs of loss showing claim as adjusted in compromise amounting to approximately 57 per cent, terms of settlement being immediate payment without discount."

"The mill was entirely destroyed. The property was built by J. W. Prestel & Sons about 1903, it being a modern up to date plant at the time. The above people operated the plant up to 1913, at which time the same was purchased by the Michigan Idaho Lumber Company, who to some extent remodeled the mill, installing additional machinery so as to take care of a large amount of standing timber which the company had acquired from the government on the forest reserve.

The mill itself is located on an old slough which the company dam up to make a log pond. It seems that the filling up of the slough has been a menace to some of the agricultural land through which it flows, and there had been considerable agitation among the farmers regarding this overflow.

"You will note in proofs of loss that loss and damage was found to be *far in excess of insurance, and deduction has been* made in *compromise amounting to $1,387.99.* This deduction was obtained from assured, due to the fact that they had failed to equip their night watchman with a watch clock, as provided in policy contract. *However, it must be borne in mind that there is also a clause in your form which states that any breach of warranty by the assured shall not vitiate policies unless it be shown that breach of warranty contributed to the loss.* Under the circumstances we feel quite pleased in being able to effect the compromise.

"*The question of ownership was taken up by this office with your*

*agents, who were aware of the transfer of property, and had consented thereto, indorsement at the time of the loss not having been made.*

"We suggest an immediate remittance to the assured, as we have previously explained *that compromise was a cash settlement.*"

On July 24th the defendant Northern Fire & Marine Insurance Company, answered as follows:

"Your letter of July 13th was just called to our attention to-day, and will say that I just got back from my vacation. We take pleasure in herewith handing you our check No. 631 for $2,857.14 in payment of the loss sustained under our policy No. 33,847, and I am also sending you the proof of reinsurance under entry No. 186 of the People's Fire Insurance Company, and entry No. 51 of the Equity Fire Insurance Company, and will say I hope you will be able to collect the same and remit to us. I am also sending you our check No. 632 payable to Wagner & Glidden, adjusters' expense for $27.93, and trust that the same will be satisfactory."

The following day, on July 25, the Northern Fire & Marine Insurance Company wired Rice to hold the draft and on the same date wrote Rice as follows:

"We wired you to hold draft payable to John W. Prestel et al., trustee, Payette, Idaho, in the matter of our loss under policy No. 33,847. I will say, Rice, that I have asked you to hold up this draft on account of some correspondence we have had with one of the companies who reinsured the risk with us, that is, the Equity Fire Insurance Company. Mr. C. McCutcheon said he was leaving that day for Chicago. He claims that this business was shut down and not running at the time of the loss. It was vacant, and will say there was nothing in our policy that permits this risk to become vacant. We do not want to be technical in the matter of payment of these losses, but we like to have our reinsurance company perfectly satisfied in the matter. I think, Mr. Rice, that you will understand our position in this matter, and if you can collect the reinsurance, I will say that we are willing to pay our part of it, providing the losses are on the square."

In reply to this letter and on July 29th, Rice wrote to the defendant company as follows:

"We are in receipt of your favor of the 27th instant, confirming your wire of the 25th instant asking that we hold your draft in payment of

above loss. We have complied with your wishes, and, inasmuch as Mr. Rice is at present out of the city, we have sent copy of your letter to him as he has had this entire matter in charge and understands all about same. Just as soon as we hear from Mr. Rice, will advise you. In the meantime we are holding your draft, together with reinsurance proofs and check payable to Wagner & Glidden, in this office, which we trust will meet with your approval."

In spite of these letters, however, and on August 3d, however, F. M. Rice wrote to Chas. H. Garrett as follows:

"We are inclosing herewith loss draft No. 631 of the Northern Fire & Marine Insurance Company for $2,857.14, in payment of above loss, which we trust you will find in order."

And on the same day he wrote to the defendant, the Northern Fire & Marine Insurance Company, as follows:

"We have your favor of the 27th utimo, which is a confirmation of your telegram of the 25th, regarding the hold-up of draft issued in settlement of this loss. We note that your reason for doing so is on account of advices that you have had from Mr. McCutcheon, secretary of the Equity Fire of Sioux City. We are very much surprised, and not a little provoked, at Mr. McCutcheon's action in this matter; for we went over the situation very carefully with him and explained to him just what the true situation was regarding the nature of this risk, and the amount of loss that was sustained by the assured, together with the standing and responsibility of the assured, and he led us to believe that there could be no objection made to the taking of the risk, or anything in connection with the loss that occurred. So that you may be fully advised regarding what the real situation is, we wish to say that Mr. C. A. Dewing, the president of the Michigan-Idaho Lumber Company, is a very prominent manufacturer of Kalamazoo, Michigan, a man of excellent financial responsibility and high standing, and a man who has been engaged in years gone by in the lumber business quite extensively in Michigan. Some time last year they had an opportunity to purchase the mill in question at Payette, which they did, in connection with the purchase of a large amount of standing timber from the United States government, located in the head waters of the Payette river. During the summer of 1913 they cut several million feet of logs, and got them into the water during the winter, and started them down stream early

this spring. In January of this year they took this mill, *which had been idle for several seasons,* and completely overhauled it, and invested several thousand dollars in getting the mill in proper shape so as to use it in the sawing of this timber they had purchased, they having purchased a sufficient amount to run them seven or eight years. *It is true, the mill was not in operation, but it had just been thoroughly over-hauled, and was all ready to begin operations on the first of June* at which time the logs would be on hand to saw. They had a night watch, as you will see by the letter of Messrs. Wagner & Glidden, who made the adjustment, and there is no doubt but what the loss they sustained in excess of the insurance was equal to as much as they had insurance on the property. We were able to get a compromise settlement for the reason that while they had a watchman clause they had no watchman's clock, and by bearing down strongly on that point *we were able to get a concession of quite a little.* In other words, the loss was settled for $10,-000 when the probable loss figured out about $12,000. *The matter was handled under the personal supervision of the writer,* and the Central National, who was interested on the loss for the same amount as your company, has already sent its draft in settlement, and we are to-day sending your draft, and will see that reinsurance proof is sent out, and we have no doubt but what the matter will be properly taken care of. The Central National retained $2,500 on the risk, while your company only retained $2,000. We of course regret very much the fact that a loss occurred, but, knowing all of the circumstances as we do now after the loss, we must say that if the risk came to us again with the same information we would accept it and issue our policies. The fact that the mill is burned and they have the lumber on hand now necessitates their building a new mill to take care of their lumber, which will probably mean an outlay of $25,000 or $30,000 in addition to the amount of insurance they are receiving. This in itself ought to indicate that the risk was a desirable one, and that there certainly was no moral hazard in connection therewith. If you do not hear promptly from the equity with their remittance for their proportion of the loss, kindly advise us, and we will endeavor to see that they give same prompt attention. We are writing you fully on the subject because we know that you are entitled to this information, and it is always our desire to furnish all the informa-

tion that properly goes with a risk so that our companies may be fully advised."

Later, and on August 10, 1914, the defendant insurance company wired F. M. Rice as follows:

"Our check payable to Idaho Michigan Lumber Company should have been payable to John W. Prestel, J. T. Crosby, J. C. Crosby, trustee, as their interest may appear.   Should we not make new check so to read?   Answer."

And Douglas Brothers & Rice replied:

"Your draft payable to Idaho Michigan Lumber Company is correct as issued.   See our letter."

On August 11th, F. M. Rice wrote to the defendant insurance company as follows:

"Your day letter of August 10th stating that your check payable to Michigan Idaho Lumber Company should have been payable to John W. Prestel, J. T. Crosby, and J. C. Crosby, trustee, as their interests may appear, came duly to hand, in reply to which we wired you as follows:

"Your draft payable to Idaho Michigan Lumber Company is correct as issued, see our letter, which message we now beg to confirm.   Indorsements changing the ownership of this risk to the 'Michigan Idaho Lumber Company' *were duly received by us before the fire occurred, but our indorsement department did not get around to it so they were not reported to the companies.*   If you will refer to the Adjuster's letter which accompanied the proofs, you will find *reference is made to these indorsements.*   As stated in our telegram, your draft was correct as issued, and was sent to Kalamazoo for delivery to the assured."

On August 18, 1914, the Northern Fire & Marine Insurance Company wrote to F. M. Rice as follows:

"I am to notify you that in the case of Mr. Prestel, J. T. Crosby, and J. S. Crosby, as their interests may appear, assured under our policy No. 34,387, I will say that I have stopped the payment of this check that we sent you in payment of this loss.   We see no reason why we should make the check payable to the Idaho-Michigan Lumber Company, when the policy reads to a different party.   We also notice by the commercial report that these people turned it into the Idaho-Michigan Lumber Company, in 1913, consequently we see no reason why this was written in the name first mentioned therein."

On August 20, 1914, F. M. Rice wrote to the Northern Fire & Marine Insurance Company as follows:

"We have your favor of the 18th instant, and regret to note that you have not honored the draft you issued in payment of the above loss. We would respectfully refer you to our letter of the 11th instant, in which we explained to you *that the indorsements changing the ownership of this plant were received by us before the fire, but unfortunately our indorsement clerk did not get to them so as to properly report same to the companies promptly.* As stated to you previously, all the details regarding this loss were gone into thoroughly, and we trust that you will reconsider the matter and honor your draft as issued, especially as the Peoples draft in payment of its proportion was sent you yesterday, and has no doubt been received by you ere this."

On August 22, 1914, the defendant, the Northern Fire & Marine Insurance Company, wrote to F. M. Rice as follows:

"Your letter of August 20th at hand in regard to the loss under policy 33,847-Payett, Idaho. I will say, Mr. Rice, a week ago last Sunday I met Mr. Fred McCutcheon, of the Equity, and had quite a conversation with him in regard to the loss under the above policy. He called my attention to several things in regard to this matter, first; that this mill had not been in operation at least twelve months prior to the fire. Also there is a clause in the policy stating that if the mill was not in operation for thirty days that the policy would cease. Now, it has been pointed out to me that the mill was sold to the Idaho-Michigan Lbr. Company sometime in 1913. Our policy did not go into effect until the 4th day of March, 1914, and we do not understand why this policy was written to Prestel, Crosby, & Crosby, trustees, as their interest may appear when they had sold the mill sometime prior to the writing of the policy. Under the circumstances, we do not see why there should have been any indorsement as to the change of ownership on this policy, in fact, we do not see why it was written to them when the Idaho-Michigan Lbr. Company were the owners at the time the policy was written. Now, Mr. Rice, this office has been very negligent in the checks they have paid out for losses under policies written at your office. *We have left this entirely with you,* but under the circumstances above named you will see there is no reason why this loss should be paid. The Equity asks us for a stay in the payment of this loss until they make a thorough investigation

which is no more than right that we should do. It is true that we received the check from the Peoples Fire Insurance Company; but which has not been cashed, but simply filed in our office until future developments. We will hear Mr. McCutcheon's reply on this matter within the next ten days, and, if we find this matter to be all right, we will reissue our check to Prestel, Crosby, & Crosby."

*H. A. Bronson,* for appellant.

It is well settled that where an insurance policy is delivered to the applicant he is presumed to know its contents, and cannot evade a forfeiture for a violation of its terms on the ground that he never read it.

Smith v. Continental Ins. Co. 6 Dak. 433, 43 N. W. 810; Hankins v. Rockford Ins. Co. 70 Wis. 1, 35 N. W. 34; Cleaver v. Traders' Ins. Co. 65 Mich. 527, 8 Am. St. Rep. 908, 32 N. W. 660; Leisen v. St. Paul F. & M. Ins. Co. 20 N. D. 316, 30 L.R.A.(N.S.) 539, 127 N. W. 837.

Neither defendant nor its agent knew that the plaintiff was the owner of the property at the time the policy was issued. Zimmerman v. Farmers' Ins. Co. 76 Iowa, 354, 41 N. W. 39; Collins v. St. Paul F. & M. Ins. Co. 44 Minn. 440, 46 N. W. 906.

Fundamentally an action for reformation is necessary, and parol proof is not admissible in an action at law to show the facts and circumstances to vary the written instrument. 17 Cyc. 703; Sargent v. Cooley, 12 N. D. 1, 94 N. W. 576.

A waiver by an agent whose powers are restricted is ineffectual to bind the insurer except as to conditions relating to the inception of the contract where the agent had full knowledge thereof. 19 Cyc. 784; Leisen v. St. Paul F. & M. Ins. Co. 20 N. D. 316, 30 L.R.A.(N.S.) 539, 127 N. W. 837; Wood v. American F. Ins. Co. 149 N. Y. 382, 52 Am. St. Rep. 733, 44 N. E. 80.

No estoppel can arise through the collusion of the agent of the defendant with the assured, or could it so arise as to make the plaintiff the assured. 19 Cyc. 825; Pomeroy v. Rocky Mountain Ins. Co. — Colo. —, 7 Pac. 295.

Because the distinction between actions at law and suits in equity is abolished, it does not follow that *all* distinctions are abolished or destroyed, or that any change was made by reason thereof in the sub-

stantive law.    Comp. Laws 1913, § 7355; Black v. Minneapolis & N. Elevator Co. 7 N. D. 133, 73 N. W. 90; Hanson v. Carlblom, 13 N. D. 361, 100 N. W. 1084.

Courts cannot lend their sanction to the recognition of a remedy at law, where the remedy at equity is ample.    Prondzinski v. Garbutt, 8 N. D. 191, 77 N. W. 1012; Niagara F. Ins. Co. v. Jordan, 20 Ann. Cas. 363, note; Thomson v. Southern Mut. Ins. Co. 90 Ga. 78, 15 S. E. 652.

Whatever affects the rate of premium or influences the insurer in accepting or rejecting a risk is material.    2 Cooley, Briefs on Ins. pp. 1163, 1166.

There were concealment and misrepresentations in procuring the policy.    Comp. Laws 1913, §§ 6480 to 6502, 6527.

It is fundamental concerning the doctrine of waiver or estoppel that either, to be effective against the party making it, must have occurred with the full knowledge of all the material facts.    19 Cyc. 778.

And, generally speaking, such questions are for the jury.    19 Cyc. 796, 798, 959; Michigan Pipe Co. v. Michigan F. & M. Ins. Co. 92 Mich. 482, 20 L.R.A. 277, 52 N. W. 1071.

Where the policy requires that any waiver of its provisions shall be in writing, signed by the president or indorsed on the policy, a parol waiver by the secretary will not avail.    Robb v. Millers Mut. F. Ins. Co. 230 Pa. 44, 79 Atl. 150.

And the insured is presumed to contract with a knowledge of the limitations where they are contained in the policy.    Tilton v. Farmers' Ins. Co. 82 Misc. 79, 143 N. Y. Supp. 107.

And such provisions in a policy are valid.    McCollough v. Home Ins. Co. 155 Cal. 659, 102 Pac. 814, 18 Ann. Cas. 863; McElroy v. Metropolitan L. Ins. Co. 84 Neb. 866, 122 N. W. 27; Leisen v. St. Paul F. & M. Ins. Co. 20 N. D. 316, 30 L.R.A.(N.S.) 539, 127 N. W. 837; Smith v. Continental Ins. Co. 6 Dak. 433, 43 N. W. 810.

There can be no waiver of the conditions and terms of the policy, except by the company itself through its proper officer, and with full knowledge of all the material facts.    West End Hotel & Land Co. v. American F. Ins. Co. 74 Fed. 114; Ward v. Metropolitan L. Ins. Co. 66 Conn. 240, 50 Am. St. Rep. 80, 33 Atl. 902; Smith v. West Branch Mut. F. Ins. Co. 31 Pa. Super. Ct. 29; Texas Bkg. & Ins. Co. v.

Hutchins, 53 Tex. 61, 37 Am. Rep. 750; Keith v. Royal Ins. Co. 117 Wis. 531, 94 N. W. 295.

Where the facts as to the existence of encumbrances are conceded to be material to the risk, a false answer or concealment is fatal to the policy, irrespective of the intent of the insured. 2 Cooley, Briefs on Ins. pp. 1394, 1399, 1407, 1410; 19 Cyc. 801; 13 Am. & Eng. Enc. Law, 238; Peet v. Dakota F. & M. Ins. Co. 7 S. D. 410, 64 N. W. 206; Weddington v. Piedmont F. Ins. Co. 141 N. C. 234, 54 S. E. 271, 8 Ann. Cas. 497; German-American Ins. Co. v. Humphrey, 62 Ark. 348, 54 Am. St. Rep. 297, 35 S. W. 428; May, Ins. 292; Hawkes v. Dodge County Mut. Ins. Co. 11 Wis. 189; Smith v. Niagara F. Ins. Co. 60 Vt. 692, 1 L.R.A. 216, 6 Am. St. Rep. 144, 15 Atl. 353; Merrill v. Agricultural Ins. Co. 73 N. Y. 452, 29 Am. Rep. 184; Imperial F. Ins. Co. v. Coös. County, 151 U. S. 452, 38 L. ed. 231, 14 Sup. Ct. Rep. 379, 1 May, Ins. 175, 176; Insurance Co. of N. A. v. Wicker, 93 Tex. 390, 55 S. W. 740; East Texas F. Ins. Co. v. Kempner, 87 Tex. 229, 47 Am. St. Rep. 99, 27 S. W. 122; McKernan v. North River Ins. Co. 206 Fed. 984; Northern Assur. Co. v. Grand View Bldg. Asso. 183 U. S. 308, 46 L. ed. 213, 22 Sup. Ct. Rep. 133; Atlas Reduction Co. v. New Zealand Ins. Co. 9 L.R.A.(N.S.) 433, 71 C. C. A. 21, 138 Fed. 497; Mulrooney v. Royal Ins. Co. 90 C. C. A. 317, 163 Fed. 833; Gilchrist Transp. Co. v. Phœnix Ins. Co. 95 C. C. A. 475, 170 Fed. 279; Moore v. Phœnix Ins. Co. 62 N. H. 240, 13 Am. St. Rep. 556; Hunt v. Springfield F. & M. Ins. Co. 196 U. S. 47, 49 L. ed. 381, 25 Sup. Ct. Rep. 179; Thompson v. Phœnix Ins. Co. 136 U. S. 287, 34 L. ed. 408, 10 Sup. Ct. Rep. 1019; McMaster v. New York L. Ins. Co. 183 U. S. 25, 46 L. ed. 64, 22 Sup. Ct. Rep. 10; Shillaber v. Robinson, 97 U. S. 68, 78, 24 L. ed. 967, 969; Charles v. Clagett, 3 Md. 82; Roper v. National F. Ins. Co. 161 N. C. 151, 76 S. E. 869; Black v. Atlantic Home Ins. Co. 148 N. C. 169, 21 L.R.A.(N.S.) 578, 61 S. E. 672; Shoucair v. North British & M. Ins. Co. 16 N. M. 563, 120 Pac. 328; Gray v. Guardian Assur. Co. 82 Hun, 380, 31 N. Y. Supp. 237; Jones & Pickett v. Michigan F. & M. Ins. Co. 132 La. 847, 61 So. 846.

Where the policy specifies certain acts as constituting an increase of hazard or risk so as to avoid the policy, and the facts are not in dispute, there is no question for the jury. 19 Cyc. 962, 769; 2 Cooley, Briefs on Ins. p. 1495.

Where there is a dispute, then what constitutes an increase of risk is essentially a question of fact. 2 Cooley, Briefs on Ins. p. 1495; Lebanon County v. Franklin F. Ins. Co. 237 Pa. 360, 44 L.R.A. (N.S.) 148, 85 Atl. 419, Ann. Cas. 1914B, 130; Girard F. & M. Ins. Co. v. Stephenson, 37 Pa. 293, 78 Am. Dec. 423; Martin v. Capital Ins. Co. 85 Iowa, 650, 52 N. W. 534; Collins v. Merchants' & B. Mut. Ins. Co. 95 Iowa, 540, 58 Am. St. Rep. 438, 64 N. W. 602; Pool v. Milwaukee Mechanics Ins. Co. 91 Wis. 530, 51 Am. St. Rep. 920, 65 N. W. 54; Kircher v. Milwaukee Mechanics' Mut. Ins. Co. 74 Wis. 470, 5 L.R.A. 779, 43 N. W. 487; Taylor v. Security Mut. F. Ins. Co. 88 Minn. 231, 92 N. W. 952; Orient Ins. Co. v. McKnight, 197 Ill. 190, 64 N. E. 339.

An insurance company may limit the powers of its agents. It was here done in clear and plain terms contained in the policy, and when plaintiff accepted the policy, it became the contract between the parties, and plaintiff was charged with a knowledge of all its terms. Sharman v. Continental Ins. Co. 167 Cal. 117, 52 L.R.A. (N.S.) 670, 138 Pac. 709.

Admissions and acts of agents, or notice received by them when acting in collusion with the third person, will not only create an estoppel as a matter of law, but likewise is not binding upon the principal either as a waiver, an admission, or even notice. 31 Cyc. 1573, 1596; 19 Cyc. 825.

Such provisions in a policy as are here mentioned are valid enforceable stipulations. They are a part of a lawful contract. 19 Cyc. 855.

If the assured has sworn wilfully to false statements in his proof of loss, as to his title or ownership, the policy will be avoided. Alfred Hiller Co. v. Insurance Co. of N. A. 125 La. 938, 32 L.R.A. (N.S.) 453, 52 So. 104, and cases cited.

The burden was upon plaintiff to establish the value of the property destroyed. This was not an affirmative defense for defendant to prove. 19 Cyc. 939, 946; McSparran v. Southern Mut. Ins. Co. 193 Pa. 184, 44 Atl. 317; Livings v. Home Mut. F. Ins. Co. 50 Mich. 207, 15 N. W. 85.

In order to establish a waiver, it must appear that the insurer had notice or full knowledge of the facts avoiding or forfeiting the insurance. 3. Cooley, Briefs on Ins. 2467, 2469, 2737; Ennis v. Retail Merchants Asso. Mut. F. Ins. Co. 33 N. D. 20, 156 N. W. 234; Pool v. Mil-

waukee Mechanics' Ins. Co. 91 Wis. 530, 51 Am. St. Rep. 920, 65 N. W. 54; McCormick v. Oriental Ins. Co. 86 Cal. 260, 24 Pac. 1003; .Freedman v. Providence Washington Ins. Co. 175 Pa. 350, 34 Atl. 730.

*Murphy & Toner,* for respondent.

In general, where defendant relies on breach of warranties or conditions, it must allege the warranty or condition relied on as having been violated and the specific facts constituting such violation, and he must bring his case clearly within the conditions or warranties relied upon. Cassimus Bros. v. Scottish Union & Nat. Ins. Co. 135 Ala. 256, 33 So. 163; Phœnix Ins. Co. v. Barnd, 16 Neb. 89, 20 N. W. 105; Bittinger v. Providence Washington Ins. Co. 24 Fed. 549; Schaetzel v. Germantown Farmers' Mut. Ins. Co. 22 Wis. 412; Tischler v. California Farmers' Mut. F. Ins. Co. 66 Cal. 178, 4 Pac. 1169; British America Assur. Co. v. Cooper, 6 Colo. App. 25, 40 Pac. 148; Montgomery v. Delaware Ins. Co. 67 S. C. 399, 45 S. E. 934; Smith v. Home Ins. Co. 47 Hun, 30; Baumiller v. Workingman's Co-op. Asso. 9 Misc. 157, 29 N. Y. Supp. 26; Farmers & M. Ins. Co. v. Wiard, 59 Neb. 451, 81 N. W. 312; Farmers & M. Ins. Co. v. Newman, 58 Neb. 504, 78 N. W. 933; Caplis v. American F. Ins. Co. 60 Minn. 376, 51 Am. St. Rep. 535, 62 N. W. 440; Cronin v. Fire Asso. of Philadelphia, 112 Mich. 106, 70 N. W. 448; Smith v. Champion, 102 Ga. 92, 29 S. E. 160; Pino v. Merchants' Mut. Ins. Co. 19 La. Ann. 214, 92 Am. Dec. 529; Helvetia Swiss F. Ins. Co. v. Edward P. Allis Co. 11 Colo. App. 264, 53 Pac. 242.

Defendant must specifically plead other insurance (Smith v. Home Ins. Co. 47 Hun, 30; Phœnix Mut. F. Ins. Co. v. Bowersox, 6 Ohio C. C. 1, 3 Ohio C. D. 321; Petty v. Mutual F. Ins. Co. 111 Iowa, 358, 82 N. W. 767; Sling v. National Assur. Co. 7 Utah, 441, 27 Pac. 170; German Ins. Co. v. Cain, — Tex. Civ. App. —, 37 S. W. 657); or failure to arbitrate (Deavenport v. Phœnix Assur. Co. 16 Tex. Civ. App. 283, 41 S. W. 399; Caston v. Monmouth M. F. Ins. Co. 54 Me. 170; Fox v. Conway F. Ins. Co. 53 Me. 107; McManus v. Western Assur. Co. 22 Misc. 269, 48 N. Y. Supp. 820); or violation of warranty as to title and ownership (Sprigg v. American Cent. Ins. Co. 101 Ky. 185, 40 S. W. 575); (Queen Ins. Co. v. Leonard, 6 Ohio C. D. 49; American Cent. Ins. Co. v. Murphy, — Tex. Civ. App. —, 61 S. W.

956; Temple v. Western Assur. Co. 35 N. B. 171; Sussex County Mut. Ins. Co. v. Woodruff, 26 N. J. L. 541) ; or misrepresentations as to condition of the property insured (Mulry v. Mohawk Valley Ins. Co. 5 Gray, 541, 66 Am. Dec. 380; Haskins v. Hamilton Mut. Ins. Co. 5 Gray, 432) ; or as to increase of hazard (Newman v. Springfield F. & M. Ins. Co. 17 Minn. 123, Gil. 98; Pierce v. Cohasset Mut. F. Ins. Co. 123 Mass. 572; New York v. Brooklyn F. Ins. Co. 3 Abb. App. Dec. 251; Phoenix Ins. Co. v. Caldwell, 187 Ill. 73, 58 N. E. 314).

Allegations of fraud or false swearing, without stating the specific facts, are not sufficient. Phoenix Ins. Co. v. McAtee, 33 Ind. Terr. 106, 70 N. E. 947.

Defense that plaintiff wilfully burned the property cannot be made under a general denial, even where plaintiff alleges loss was caused without his fault. Corkery v. Security F. Ins. Co. 99 Iowa, 382, 68 N. W. 792.

In the absence of a counterclaim, under our practice where no reply is necessary, waiver and estoppel may be proved without being alleged. Parno v. Iowa Merchants Mut. Ins. Co. 114 Iowa, 132, 86 N. W. 210; Crittenden v. Springfield F. & M. Ins. Co. 85 Iowa, 652, 39 Am. St. Rep. 321, 52 N. W. 548; Norris v. Hartford F. Ins. Co. 57 S. C. 358, 35 S. E. 572; Kingman v. Lancashire Ins. Co. 54 S. C. 599, 32 S. E. 762; Gans v. St. Paul F. & M. Ins. Co. 43 Wis. 108, 28 Am. Rep. 535; Kephart v. Continental Casualty Co. 17 N. D. 383, 116 N. W. 349; National German American Bank v. Lang, 2 N. D. 66, 49 N. W. 414; Sandmeyer v. Dakota F. & M. Ins. Co. 2 S. D. 346, 50 N. W. 353; Morris v. Hubbard, 10 S. D. 259, 72 N. W. 694; Houghton Implement Co. v. Vavrowski, 19 N. D. 594, 125 N. W. 1024; Buchanan v. Randall, 21 S. D. 44, 109 N. W. 513.

The receipt of a letter by the insured, hinting that the property would be purposely burned, the contents of which insured did not communicate to the insurance company, was held not to avoid the policy or increase the risk. Hartford F. Ins. Co. v. Dorroh, — Tex. Civ. App. —, 133 S. W. 465.

Such terms and conditions in a policy of insurance refer to hazards resulting from physical changes. Williamsburg City F. Ins. Co. v. Weeks Drug Co. — Tex. Civ. App. —, 133 S. W. 1097; Albion Lead Works v. Williamsburg City F. Ins. Co. 2 Fed. 486; State Ins. Co. v.

Taylor, 14 Colo. 509, 20 Am. St. Rep. 281, 24 Pac. 333; Angier v. Western Assur. Co. 10 S. D. 87, 66 Am. St. Rep. 685, 71 N. W. 761; Loud v. Citizens Mut. Ins. Co. 2 Gray, 221.

Here failure or neglect to make known, without inquiry, facts which the insurer may regard as material, is not concealment within the meaning of the policy. Arthur v. Palatine Ins. Co. 35 Or. 27, 76 Am. St. Rep. 450, 57 Pac. 62; Orient Ins. Co. v. Peiser, 91 Ill. App. 278; Cleavenger v. Franklin F. Ins. Co. 47 W. Va. 595, 35 S. E. 998; 2 Clement, Fire Ins. 142; Wolpert v. Northern Assur. Co. 44 W. Va. 734, 29 S. E. 1024; Morotock Ins. Co. v. Rodefer Bros. 92 Va. 747, 53 Am. St. Rep. 848, 24 S. E. 393; Georgia Home Ins. Co. v. Holmes, 75 Miss. 390, 65 Am. St. Rep. 611, 23 So. 183.

Occupied means used for human habitation. Vacant means both the absence of occupancy by human beings and that the contents of the building have been removed. Bellevue Roller Mill Co. v. London & L. F. Ins. Co. 4 Idaho, 307, 39 Pac. 196; 13 Am. & Eng. Enc. Law, 280, 281.

Whether in writing or oral, the statements made by Rice to Hand, if made, were self-serving declarations made of a past transaction by an agent to his principal, or by one general agent to another general agent without the knowledge or participation of the defendant. Mulroy v. Jacobson, 24 N. D. 354, 139 N. W. 697; Huston v. Johnson, 29 N. D. 555, 151 N. W. 774.

The thirty-day clause relating to idleness had no application if the mill was idle when the policy was issued. The questions of waiver and estoppel also apply to this issue. At the time of the fire and during the entire evening before the fire, the watchman was on duty patroling the premises. Hence the absence of the watchman's clock did not contribute to the loss. 13 Am. & Eng. Enc. Law, 284; Hanover F. Ins. Co. v. Gustin, 40 Neb. 828, 59 N. W. 375; King Brick Mfg. Co. v. Phœnix Ins. Co. 164 Mass. 291, 41 N. E. 277; Burlington F. Ins. Co. v. Coffman, 13 Tex. Civ. App. 439, 35 S. W. 406; Phœnix Assur. Co. v. Coffman, 10 Tex. Civ. App. 631, 32 S. W. 810; Kansas Mill Owners & Mfrs. Mut. F. Ins. Co. v. Metcalf, 59 Kan. 383, 53 Pac. 68; London & L. Ins. Co. v. Gerteisen, 106 Ky. 815, 51 S. W. 617; McGannon v. Michigan Millers' Mut. F. Ins. Co. 127 Mich. 636, 54 L.R.A. 739, 89 Am. St. Rep. 501, 87 N. W. 61; Au Sable Lumber Co. v. Detroit

Mfrs. Mut. F. Ins. Co. 89 Mich. 407, 50 N. W. 870; McGannon v. Millers' Nat. Ins. Co. 171 Mo. 143, 94 Am. St. Rep. 778, 71 S. W. 160.

The allegation as to increase of hazard as it is made in the answer is a mere conclusion. The pleader does not state how or why it was increased. The specific facts claimed to constitute the increased hazard must be pleaded. Peirce v. Cohasset Mut. F. Ins. Co. 123 Mass. 572; New York v. Brooklyn F. Ins. Co. 3 Abb. App. Dec. 251; Newman v. Springfield F. & M. Ins. Co. 17 Minn. 123, Gil. 98.

The insured did not agree to keep buckets and barrels of water on the premises in anticiptation of a fire. No such requirement is found in the policy. Jones v. Hatchett, 14 Ala. 743.

A mortgage or trust deed does not violate the policy. 19 Cyc. 694.

A subagent of the general agent adjusted the loss and prepared in writing the proofs of loss. At that time the appellant knew all about how plaintiff became the owner of the property. Under these circumstances it is held that false statements in the proofs of loss are not binding on the assured. Cook v. Lion F. Ins. Co. 67 Cal. 368, 7 Pac. 784; Crittenden v. Springfield F. & M. Ins. Co. 85 Iowa, 652, 39 Am. St. Rep. 321, 52 N. W. 548; Castner v. Farmers' Mut. F. Ins. Co. 50 Mich. 273, 15 N. W. 452; Star Union Lumber Co. v. Finney, 35 Neb. 214, 52 N. W. 1113.

The principle governing all cases is the same, namely, that where a state of facts should not exist and do, and at the time of the issuance of the policy the agent of the insurance company knew this, the provisions of the policy are waived. Leisen v. St. Paul F. & M. Ins. Co. 20 N. D. 315, 30 L.R.A.(N.S.) 539, 127 N. W. 837; Bellevue Roller Mill Co. v. London & L. F. Ins. Co. 4 Idaho, 307, 39 Pac. 196; Williams v. North German Ins. Co. 24 Fed. 625; Born v. Home Ins. Co. 120 Iowa, 299, 94 N. W. 849; Phœnix Ins. Co. v. Angel, 18 Ky. L. Rep. 1034, 38 S. W. 1067; Haire v. Ohio Farmers' Ins. Co. 93 Mich. 481, 53 N. W. 623; Wilson v. Minnesota Farmers' Mut. F. Ins. Co. 36 Minn. 112, 1 Am. St. Rep. 659, 30 N. W. 401; Farmers & M. Ins. Co. v. Wiard, 59 Neb. 451, 81 N. W. 312; German Ins. Co. v. Everett, — Tex. Civ. App. —, 36 S. W. 125; Continental Ins. Co. v. Cummings, 98 Tex. 115, 81 S. W. 705; Welch v. Fire Asso. of Philadelphia, 120 Wis. 456, 98 N. W. 227; Henderson v. Standard F. Ins. Co. 143 Iowa,

572, 121 N. W. 714; German. Ins. Co. v. York, 48 Kan. 488, 30 Am. St. Rep. 313, 29 Pac. 586; German-American Ins. Co. v. Yeagley, 2 Ann. Cas. 282, note; Sharp v. Scottish Union & Nat. Ins. Co. 136 Cal. 542, 69 Pac. 253, 615; Allen v. Phœnix Assur. Co. 14 Idaho, 728, 95 Pac. 829; Hulen v. National F. Ins. Co. 80 Kan. 127, 102 Pac. 52; Queen Ins. Co. v. Straughan, 70 Kan. 186, 109 Am. St. Rep. 421, 78 Pac. 447; Arkansas Ins. Co. v. Cox, 21 Okla. 873, 20 L.R.A.(N.S.) 775, 129 Am. St. Rep. 808, 98 Pac. 552; Hartford F. Ins. Co. v. Redding, 47 Fla. 228, 37 So. 62; Clay v. Phœnix Ins. Co. 97 Ga. 44, 25 S. E. 417; City F. Ins. Co. v. Carrugi, 41 Ga. 660; Lycoming Ins. Co. v. Barringer, 73 Ill. 230; Reaper Ins. Co. v. Jones, 62 Ill. 458; Lamb v. Council Bluffs Ins. Co. 70 Iowa, 238, 30 N. W. 497; Rhode Island Underwriters' Asso. v. Monarch, 98 Ky. 305, 32 S. W. 959; Emery v. Piscataqua F. & M. Ins. Co. 52 Me. 322; National F. Ins. Co. v. Crane, 16 Md. 260, 77 Am. Dec. 289; Copeland v. Dwelling-house Ins. Co. 77 Mich. 554, 43 N. W. 991; Broadwater v. Lion F. Ins. Co. 34 Minn. 465, 26 N. W. 455; Horwitz v. Equitable Mut. Ins. Co. 40 Mo. 557, 93 Am. Dec. 321; Hadley v. New Hampshire F. Ins. Co. 55 N. H. 110; Carpenter v. German American Ins. Co. 135 N. Y. 298, 31 N. E. 1015; Berry v. American Cent. Ins. Co. 132 N. Y. 49, 28 Am. St. Rep. 548, 30 N. E. 254; Brothers v. California Ins. Co. 121 N. Y. 659, 24 N. E. 1092; Cowell v. Phœnix Ins. Co. 126 N. C. 684, 36 S. E. 184; Melvin v. Insurance Co. of N. A. 2 Luzerne Leg. Reg. 219; Swartz v. Insurance Co. 15 Phila. 206; American Cent. Ins. Co. v. McCrea, 8 Lea. 513, 41 Am. Dec. 647; Planters' Mut. Ins. Co. v. Lyons, 38 Tex. 253; Ætna Ins. Co. v. Eastman, — Tex. Civ. App. —, 80 S. W. 255; Hibernia Ins. Co. v. Malevinsky, 6 Tex. Civ. App. 81, 24 S. W. 804; West v. Norwich Union F. Ins. Soc. 10 Utah, 442, 37 Pac. 685; Mutual F. Ins. Co. v. Ward, 95 Va. 231, 28 S. E. 209; Henchel v. Oregon F. & M. Ins. Co. 4 Wash. 476, 30 Pac. 736, 31 Pac. 332, 765; Schultz v. Caledonia Ins. Co. 94 Wis. 42, 68 N. W. 414; Dupuy v. Delaware Ins. Co. 63 Fed. 680; Diebold v. Phœnix Ins. Co. 33 Fed. 807; Hunt v. Mercantile Ins. Co. 22 Fed. 503; 28 Century Dig. § 1016; Mentz v. Lancaster F. Ins. Co. 79 Pa. 475; Rathbone v. City F. Ins. Co. 31 Conn. 193; Moffitt v. Phœnix Ins. Co. 11 Ind. App. 233, 38 N. E. 835.

The persons with whom the assured here dealt were the local, general

agents, who in the absence of some restriction of authority, brought home to the assured, the respondent, were, as to him, the appellant itself. Maryland F. Ins. Co. v. Gusdorf, 43 Md. 506; Henchel v. Western Assur. Co. 4 Wash. 816, 30 Pac. 735; West v. Norwich Union F. Ins. Soc. 10 Utah, 442, 37 Pac. 685.

Appellant tries to avoid the payment of the loss here, because its consent to other insurance was not indorsed on the policy. Copeland v. Dwelling-house Ins. Co. 77 Mich. 554, 43 N. W. 992; Kausal v. Minnesota Farmers' Mut. F. Ins. Asso. 31 Minn. 17, 47 Am. Rep. 776, 16 N. W. 431; Brandup v. St. Paul F. & M. Ins. Co. 27 Minn. 393, 7 N. W. 735, 63 Fed. 680, supra.

The silence of the company is held to be an implied waiver, and its silence leading the assured to believe he is protected, estops it to question liability. Knickerbocker L. Ins. Co. v. Norton, 96 U. S. 234, 24 L. ed. 689; Rauch v. Michigan Millers' Mut. F. Ins. Co. 131 Mich. 281, 91 N. W. 160; Phœnix Ins. Co. v. Johnson, 143 Ill. 106, 32 N. E. 429; Orient Ins. Co. v. McKnight, 197 Ill. 190, 64 N. E. 339; Farmers Mut. F. Ins. Co. v. Schaeffer, 82 Md. 377, 33 Atl. 728; Swedish American Ins. Co. v. Knutson, 67 Kan. 71, 100 Am. St. Rep. 382, 72 Pac. 526; Westlake v. St. Lawrence County Mut. Ins. Co. 14 Barb. 206; Home F. Ins. Co. v. Kuhlman, 58 Neb. 488, 78 N. W. 936.

Where it is claimed that a policy has been canceled, or superseded by another contract, it must be so pleaded, or the company will be estopped and will be deemed to have waived it. Denney v. Stoud, 59 Neb. 731, 82 N. W. 18; Kerstetter v. Raymond, 10 Ind. 199; Billingsley v. Stratton, 11 Ind. 396; Law v. Plume, 17 N. J. L. 466; Pike v. Mott, 5 Vt. 108.

Reformation of a policy and recovery thereunder may be had in the same suit. Deitz v. Providence Washington Ins. Co. 31 W. Va. 851, 13 Am. St. Rep. 909, 8 S. E. 616; Burke v. Niagara F. Ins. Co. 34 N. Y. S. R. 701, 12 N. Y. Supp. 254, 128 N. Y. 668, 29 N. E. 148; Eggleston v. Council Bluffs Ins. Co. 65 Iowa, 308, 21 N. W. 652; American Cent. Ins. Co. v. McLanathan, 11 Kan. 533; State Ins. Co. v. Schreck, 27 Neb. 527, 6 L.R.A. 524, 20 Am. St. Rep. 696, 43 N. W. 340; Carey v. Home Ins. Co. 97 Iowa, 619, 66 N. W. 920; Kansas Farmers F. Ins. Co. v. Saindon, 52 Kan. 486, 39 Am. St. Rep. 356, 35 Pac. 15; Hobkirk v. Phœnix Ins. Co. 102 Wis. 13, 78 N. W. 160;

Smith v. Commonwealth Ins. Co. 49 Wis. 322, 5 N. W. 804; German Ins. Co. v. Davis, 6 Kan. App. 268, 51 Pac. 60; Maryland Home F. Ins. Co. v. Kimmell, 89 Md. 437, 43 Atl. 764; Ben Franklin Ins. Co. v. Gillett, 54 Md. 212; Maher v. Hibernia Ins. Co. 67 N. Y. 292; Hammel v. London Queen Ins. Co. 50 Wis. 240, 6 N. W. 805.

The agent Rice was permitted to modify policies. Hence we urge that no reformation of the policy was necessary as this policy had been modified by mutual agreement of the parties, so that plaintiff was the assured. Washington F. Ins. Co. v. Davidson, 30 Md. 91; Solms v. Rutgers F. Ins. Co. 4 Abb. App. Dec. 279; McLean v. American Mut. F. Ins. Co. 122 Iowa, 355, 98 N. W. 146; Montgomery v. American Cent. Ins. Co. 108 Wis. 146, 84 N. W. 175; Westchester F. Ins. Co. v. Earle, 33 Mich. 143.

It is incumbent on defendant to plead encumbrances. Danvers Mut. F. Ins. Co. v. Schertz, 95 Ill. App. 656; Home Ins. Co. v. Gaddis, 3 Ky. L. Rep. 159; Farmers & M. Ins. Co. v. Newman, 58 Neb. 504, 78 N. W. 933; Light v. Greenwich Ins. Co. 105 Tenn. 480, 58 S. W. 851; Arthur v. Palatine Ins. Co. 35 Or. 27, 57 Pac. 62; Liverpool & L. & G. Ins. Co. v. Ricker, 10 Tex. Civ. App. 264, 31 S. W. 248; Quarrier v. Peabody Ins. Co. 10 W. Va. 507, 27 Am. Rep. 582; O'Brien v. Ohio Ins. Co. 52 Mich. 131, 17 N. W. 726; City F. Ins. Co. v. Carrugi, 41 Ga. 660; Morotock Ins. Co. v. Rodefer Bros. 92 Va. 747, 53 Am. St. Rep. 848, 24 S. E. 393; Boulware v. Farmers' & L. Co-op. Ins. Co. 77 Mo. App. 639; Seal v. Farmers & M. Ins. Co. 59 Neb. 253, 80 N. W. 807; Slobodisky v. Phenix Ins. Co. 53 Neb. 816, 74 N. W. 270; Insurance Co. of N. A. v. Bachler, 44 Neb. 549, 62 N. W. 911.

A mortgage under which there is nothing due is not an encumbrance. Laird v. Littlefield, 164 N. Y. 597, 58 N. E. 1089; Merril v. Agricultural Ins. Co. 73 N. Y. 452, 29 Am. Rep. 184; Smith v. Niagara F. Ins. Co. 60 Vt. 682, 1 L.R.A. 216, 6 Am. St. Rep. 144, 15 Atl. 353; Hawkes v. Dodge County Mut. Ins. Co. 11 Wis. 188; Continental Ins. Co. v. Vanlue, 126 Ind. 410, 10 L.R.A. 843, 26 N. E. 119; Lang v. Hawkeye Ins. Co. 74 Iowa, 673, 39 N. W. 86; Dougherty v. German-American Ins. Co. 67 Mo. App. 526; Brennen v. Connecticut F. Ins. Co. 99 Mo. App. 718, 74 S. W. 406; Mutual Mill Ins. Co. v. Gordon, 121 Ill. 366, 12 N. E. 747; Ring v. Windsor County Mut. Ins. Co. 54 Vt. 434.

Where the facts are not in dispute, the question of increase of hazard is for the court. 19 Cyc. 962.

On the proof of loss and adjustment thereof, and with full knowledge of all the facts, the appellant agreed to pay the amount of the adjusted loss. West Coast Lumber Co. v. State Invest. & Ins. Co. 98 Cal. 502, 33 Pac. 258; Silverburg v. Phenix Ins. Co. 67 Cal. 36, 7 Pac. 38; Murray v. Home Benefit Life Asso. 90 Cal. 402, 25 Am. St. Rep. 133, 27 Pac. 309; Wheaton v. North British & M. Ins. Co. 76 Cal. 415, 18 Pac. 758; Stache v. St. Paul F. & M. Ins. Co. 49 Wis. 89, 35 Am. St. Rep. 772, 5 N. W. 36; Smith v. Glen's Falls Ins. Co. 62 N. Y. 85.

The general agent of the company had the right to waive provisions of the policy, notwithstanding the fact that the policy provides that no officer, agent, or representative of the company shall have authority to waive or change the same. Knickerbocker L. Ins. Co. v. Norton, 96 U. S. 234, 24 L. ed. 689; Breeden v. Ætna F Ins. Co. 23 S. D. 417, 122 N. W. 348; Reed v. Continental Ins. Co. 6 Penn. (Del.) 204, 65 Atl. 569; Indian River State Bank v. Hartford F. Ins. Co. 46 Fla. 283, 35 So. 228; Vogle v. Ohio Farmers' Ins. Co. 166 Ind. 239, 3 L.R.A.(N.S.) 966, 76 N. E. 977; Peters v. Plano Mfg. Co. 21 S. D. 198, 110 N. W. 783; Schomer v. Hekla F. Ins. Co. 50 Wis. 575, 7 N. W. 544; Mattocks v. Des Moines Ins. Co. 74 Iowa, 233, 37 N. W. 174; American Ins. Co. v. Gallatin, 48 Wis. 36, 3 N. W. 772; Continental F. Ins. Co. v. Brooks, 131 Ala. 614, 30 So. 876; German Ins. Co. v. Amsbaugh, 8 Kan. App. 197, 55 Pac. 481; Kotwicki v. Thuringia Ins. Co. 134 Mich. 82, 95 N. W. 976; Thompson v. Traders' Ins. Co. 169 Mo. 12, 68 S. W. 889; Dick v. Merchants' Ins. Co. 92 Wis. 46, 65 N. W. 742.

Notice to the agent of the company prior to or at the time of the issuance of the policy, when acting about his agency, is notice to the company. 19 Cyc. 789, 807–809; West v. Norwich Union F. Ins. Co. 10 Utah, 442, 37 Pac. 685.

Where the general agent of the company, during the running of the policy, writes letters assuming the validity of the insurance, his acts are binding on the company, and raise a waiver as against the company. 19 Cyc. 819 (b).

Appellant knew respondent was the owner of the property long before the fire, and demanded and insisted on the premium being paid, and received and retained such premium, and received and detained

the proofs of loss. Do these acts constitute waiver? 19 Cyc. 789, 794, 797–873; Johnson v. Dakota F. & M. Ins. Co. 1 N. D. 167, 45 N. W. 799; Hartford F. Ins. Co. v. Orr, 56 Ill. App. 629; Phenix Ins. Co. v. Covey, 41 Neb. 724, 60 N. W. 12; Miner v. Phœnix Ins. Co. 27 Wis. 693, 9 Am. Rep. 479.

The subagent extended the time in which to make proofs of loss. He had the power to do so. 19 Cyc. 848(d) 859(e); Hitchcock v. State Ins. Co. 10 S. D. 27, 72 N. W. 898; Capital City Ins. Co. v. Caldwell Bros. 95 Ala. 77, 10 So. 355; Mickey v. Burlington Ins. Co. 35 Iowa, 174, 14 Am. Rep. 494; Hibernia Ins. Co. v. O'Connor, 29 Mich. 241; Minneapolis, St. P. & S. Ste. M. R. Co. v. Home Ins. Co. 64 Minn. 61, 66 N. W. 132; Commercial Union Assur. Co. v. Hocking, 115 Pa. 407, 2 Am. St. Rep. 562, 8 Atl. 589; Rheims v. Standard F. Ins. Co. 39 W. Va. 672, 20 S. E. 670.

But there was a settlement, adjustment of the loss, and a promise to pay. Pennsylvania F. Ins. Co. v. Hughes, 47 C. C. A. 459, 108 Fed. 497; Phœnix Ins. Co. v. Taylor, 5 Minn. 492, Gil. 393; German Ins. Co. v. Allen, 69 Kan. 729, 77 Pac. 529; British America Assur. Co. v. Bradford, 60 Kan. 82, 55 Pac. 335; Glasscock v. Des Moines Ins. Co. 125 Iowa, 170, 100 N. W. 503; Tillis v. Liverpool & L. & G. Ins. Co. 46 Fla. 268, 110 Am. St. Rep. 89, 35 So. 171; German F. Ins. Co. v. Carrow, 21 Ill. App. 631; Farmers' Mut. Relief Asso. v. Koontz, 4 Ind. App. 538, 30 N. E. 145; Eddy v. Merchants' M. & C. Mut. F. Ins. Co. 72 Mich. 651, 40 N. W. 775; Farmers' Mut. F. Ins. Co. v. Gargett, 42 Mich. 289, 3 N. W. 954; Wagner v. Dwelling-House Ins. Co. 143 Pa. 338, 22 Atl. 885; Gibbs v. Dutchess County Mut. Ins. Co. 50 N. Y. S. R. 35, 21 N. Y. Supp. 203; Eagan v. Ætna F. & M. Ins. Co. 10 W. Va. 583; Oshkosh Gaslight Co. v. Germania F. Ins. Co. 71 Wis. 454, 5 Am. St. Rep. 233, 37 N. W. 819; Concordia F. Ins. Co. v. Koretz, 14 Colo. App. 386, 60 Pac. 191.

Bruce, J. (after stating the facts as above). The plaintiff maintains that the action is primarily brought upon the draft and upon the contract of settlement and adjustment which it represented rather than upon the insurance policy, and that what is said in the complaint in regard to the insurance policy is merely surplusage, or at the most merely relates to the consideration.

In this contention we believe that the plaintiff is correct, and that the action is based upon the allegation of the complaint which alleges "that on or about the 28th day of April, 1914, the loss under the policy hereinbefore described was compromised and adjusted between the plaintiff and defendant on the basis of the sum of $10,000, and the amount agreed upon at said time as being due and payable from the defendant to the plaintiff under the policy aforesaid was the sum of ($2,857.14) two thousand eight hundred and fifty-seven and 14/100 dollars, which amount defendant promised and agreed to pay to the plaintiff, and thereafter for the purpose of paying the loss so agreed upon the draft hereinbefore described was given."

Although, therefore, the record in this case is quite voluminous and numerous matters are discussed in the briefs of counsel, the question at issue is a comparatively simple one, and, unless we can say that there was evidence which should have been submitted to the jury which tended to show that the settlement with the adjuster and the subsequent issuance of the draft in question were brought about by the fraud of the plaintiff or were the result of a mistake of fact such as would furnish a ground for a rescission of the contract, the verdict was properly directed, and we have no option but to affirm the judgment.   Ostrander, Fire Ins. § 372; Godchaux v. Merchants' Mut. Ins. Co. 34 La. Ann. 235; Phoenix Ins. Co. v. Van Allen, 29 Ill. App. 149.

There can be no question that the adjuster had authority to adjust the loss, and that he compromised and settled it, and agreed on behalf of the defendant company to pay the amount sued upon.   There can be no question that the settlement was approved by the company, that a draft was sent to their general agents, Douglas & Rice, in payment thereof, and with directions to deliver to the plaintiff.   There can be no question as to the general agency of Douglas & Rice, and there can be no contention that the plaintiffs, at the time of the delivery of the draft, and their acceptance of it, and of the settlement of the controversy out of which it arose, and in payment of which it was given, had any knowledge that the authority of the agents to deliver the same had in any manner been withdrawn.

We have a case, therefore, where the general agents of an insurance company, who have throughout been intrusted by that company with the almost unlimited control of their business, are given a draft with which

to pay for a settlement which they have made under the authority of that company, and where, though before such delivery they are told to hold up the draft, they deliver it without any knowledge on the part of the payee of the secret instructions which they have received.

It is well established that a general agent of an insurance company who has had given to him a draft payable to an insurer has implied authority to deliver the same.

It is also well established that "what third persons are interested in is not the secret processes of the principal's mind, but the visible result of those processes—the character in which the agent is held out by the principal to those who may have occasion or opportunity to deal with him. This character is a tangible, discernible thing, and, so far as third persons are concerned, must be held to be authorized, as it is the only expression and evidence from which the principal intends that they shall determine his purposes and objects. . . . Instructions or limitations which are not disclosed cannot be permitted to affect apparent powers. . . . Although the agent violates his instructions or exceeds the limits set to his authority, he will yet bind his principal to such third persons, if his acts are within the scope of the authority, which the principal has caused or permitted him to appear to possess." Mechem, Agency, §§ 278, 279; Taylor v. Craig, 2 J. J. Marsh. 449; Dixon v. Dixon, 31 Vt. 450, 76 Am. Dec. 128; Merriam v. Rockwood, 47 N. H. 81; Passumpsic Bank v. Goss, 31 Vt. 318.

But was the defendant insurance company led to make the contract of settlement and adjustment in question and to issue the draft in question through a mistake of fact, or through fraud on the part of the plaintiff, and if so can it repudiate the settlement and disallow the draft upon these grounds? We think not.

The only reason for ordering the holding up of the draft which was stated by the secretary of the company at the time of the repudiation was that "the business was shut down and not running at the time of the loss;" and this objection was made merely because the agent of some other insurance company, which was also interested, had claimed that such was the fact, and that "we (the defendant) like to have our re-insurance companies perfectly satisfied in the matter." The only reason for the refusal of its payment after it had been delivered was that it should have been made payable to Prestel, and J. I. and J. S. Crosby,

as their interests might appear instead of to the plaintiff, the Idaho Michigan Lumber Company. "We see no reason," defendants' secretary wrote, "why we should make the check payable to the Idaho-Michigan Lumber Company when the policy reads to a different party. We also notice by the commercial reports that these people turned it into the Idaho-Michigan Lumber Company in 1913, consequently we see no reason why this was written in the name first mentioned therein."

There is positive and undisputed testimony, however, that all of these facts were known to the general agents at the time of the adjustment and at the time of the delivery of the draft. There is also evidence that the fact of the transfer of the property to the plaintiff was communicated to the agents, Douglas & Rice, by the insured with a request to attach riders to the policy to that effect, and that the agents had only failed to report this fact to the company through inadvertence, and that this fact *was called to the attention of the secretary of the defendant company itself in the adjuster's letter which was sent to it on July 13, 1914, and in response to which the draft was mailed.* There is also evidence to the effect that, after the request for the riders, the general agents assured the plaintiff that its property was "covered."

Defendant, it is true, claims that the word "covered" does not mean what it naturally implies, but merely that they would make a notation and at a later date issue a new policy which was then being considered. This contention, however, hardly sounds plausible, and we are sure that no business man would give that meaning to the word. Douglas & Rice, indeed, wrote that "they were *holding* the risk covered," and not that at a subsequent date they would cover it. The letter of the adjuster, also to which we have before referred, absolutely refutes this contention.

Surely the knowledge of these agents must be imputed to their principal, and it must be held as a matter of law that the defendant company, at the time of the acceptance of the settlement and of the signing and transmitting the draft, knew what its agents knew. The adjuster's letter too informs it of these very facts, and Hand (the secretary of the defendant company) himself testified: "We issued the draft after the *receipt of the report of the adjusters with* proof of loss and the notice of loss and the letter from Rice dated May 11th, *and with full knowledge of all facts disclosed therein.*"

Nor is there any merit in the contention that the adjuster did not

actually visit the premises and know of the vacancy and change of title. He at any rate reported to the general agents, and the general agents had knowledge of these facts." It is also undisputed that the general agents had almost unlimited authority in these matters. Otherwise why the statement of the secretary of the defendant in his letter of August 20th, when he wrote: "Now Mr. Rice, this office has been very negligent in the checks they have paid out for losses under policies written at your office. *We have left this entirely with you,* but under the circumstances above named you will see there is no reason why this loss should be paid."

The general agents in short had actual authority to write the insurance and to adjust the loss, and implied authority, even after the secret withdrawal or suspension of that which was actually given, to deliver the same. Relying upon this implied authority, and upon the adjustment which was made under authority which was actual, and which was ratified and approved by the company with full knowledge of the facts, and by the very act of drawing the draft and transmitting it for delivery, the plaintiff consented to a compromise of its claim and accepted the draft. After this acceptance it could not later have insisted upon repudiating the agreement and receiving a larger sum, unless with the consent of the defendant. Surely now the defendant cannot, in the absence of fraud or mistake, and we find none to have existed, insist upon that repudiation. Mills v. Lee, 6 T. B. Mon. 91, 17 Am. Dec. 118; McCabe Bros. v. Ætna Ins. Co. 9 N. D. 19, 47 L.R.A. 641, 81 N. W. 426.

"The settlement and contract to pay a specified sum," says the supreme court of New York, in the case of Smith v. Glen's Falls Ins. Co. 62 N. Y. 85, "operates as a waiver of any warranty in the policy, unless the settlement and contract were procured by the fraud of the assured; and this is not found, and scarcely claimed. It is said that the company did not know of the breach of the warranty at the time of the settlement. The answer is that when the claim was made for the loss the company was required to ascertain the facts as to any breach of warranty. If they saw fit to pay the claim, or compromise it, or to make a new contract, without such examination, it must be deemed to have waived it; and, in the absence of fraud, it cannot afterwards avail itself of such breach. It cannot urge payment or settlement by mistake on account of a want of knowledge of such breach. The time for investiga-

35 N. D.—18.

tion as to breaches of warranty is when a claim is made for payment, and, if the company elects to pay the claim, or, what is equivalent, to adjust it by an independent contract, it cannot afterward, in the absence of fraud, retract or fall back upon an alleged breach of warranty." See also Ostrander, Fire Ins. §§ 213, 214, 372; Commercial Bank v. Firemen's Ins. Co. 87 Wis. 297, 58 N. W. 391; Phœnix Ins. Co. v. Van Allen, 29 Ill. App. 149; Godchaux v. Merchants' Mut. Ins. Co. 34 La. Ann. 235.

These being the facts of the case, and the action being based on the settlement, and not on the policy, not only is there no need of a reformation in equity of such policy, but no right of repudiation can be claimed on account of any breaches thereof, if breaches there be.

We are satisfied, indeed, that even if at the time of the issuance of the original policy the general agent of the defendant company was not informed of all of the facts of which it now complains, both it and its general agent had knowledge of these facts not only when the riders were attached (or were conceded to be attached, by their promise that they would keep the property "covered"), but that all of these things were known to both the company and its general agent at the time of the settlement and at the time of sending the draft. Such being the case, the breaches, if any, were waived, and the settlement cannot now be repudiated. 19 Cyc. 780, 784; McCabe Bros v. Ætna Ins. Co. 9 N. D. 19, 47 L.R.A. 641, 81 N. W. 426; Leisen v. St. Paul F. & M. Ins. Co. 20 N. D. 316, 30 L.R.A.(N.S.) 539, 127 N. W. 837; Johnson v. Farmers' Ins. Co. 126 Iowa, 565, 102 N. W. 502; Georgia Home Ins. Co. v. Holmes, 75 Miss. 390, 65 Am. St. Rep. 611, 23 So. 183; Morotock Ins. Co. v. Rodefer Bros. 92 Va. 747, 53 Am. St. Rep. 848, 24 S. E. 393; Crittenden v. Springfield F. & M. Ins. Co. 85 Iowa, 652, 39 Am. St. Rep. 321, 52 N. W. 548.

The judgment of the District Court is affirmed.