HOWREY, ET AL v. STAR INSURANCE COMPANY OF AMERICA.

(No. 1814; January 9, 1934; 28 Pac. (2d) 477)

410

The cause was submitted for the appellant on the brief of *Mr. John D. Dawson* and *Mr. L. C. Daniels* of Douglas.

412

The cause was submitted for the respondents on the brief of *Joseph Garst* of Douglas.

414

RINER, Justice.

Direct appeal proceedings bring this case here for the review of a judgment of the District Court of Converse County. The respondents, Cecil T. Howrey and L. B. Walters, will generally hereinafter be referred to either as the "plaintiffs" or by their respective names, and the appellant Star Insurance Company of America will be designated either as the "defendant" or as the "Star Company."

The principal facts material to be considered on this appeal are very little in dispute and are substantially as follows:

In 1920, one Clyde Francisco sold to Howrey and Walters aforesaid, and who lived in Douglas, Wyoming, an International automobile truck. The vendor himself, at the time of his prior purchase of the truck from the International Harvester Company of America,—hereinafter generally referred to as the "Harvester Company"—had not paid the full purchase price thereof but had given a mortgage, in due course placed of record, to the Harvester Company to secure the unpaid portion. The amount thus due that corporation at the time of Francisco's sale to Howrey and Walters was approximately the sum of $1000, and this amount the vendees assumed and agreed to pay. They also, on April 13, 1929, executed to Francisco a mortgage on said truck to secure their several notes to him evidencing the sale price of the vehicle and totaling $1600. The instrument last mentioned was filed for record in Converse county, April 15', 1929.

Respondent Walters was contemplating obtaining insurance on the truck but, before he did so, the Harvester Company notified him that it had already taken out insurance in the Star Company and had paid the premium therefor, which amount the plaintiffs there-

after duly repaid to the Harvester Company. This insurance policy was dated September 6, 1929, covered the property insured for a period of one year, limited the liability thereon to $1000, was issued to Cecil T. Howrey and L. B. Walters, and contained a loss payable clause reading:

"It is understood and agreed that loss, if any, subject to all the terms and conditions of the policy is payable first to International Harvester Company of America, Cheyenne, Wyoming, balance, if any, payable to Cecil T. Howrey & L. B. Walters."

Among other provisions in the policy, were also the following:

"This entire policy shall be void if the insured has concealed or misrepresented any material fact or circumstance concerning this insurance or the subject thereof; or in case of any fraud, attempted fraud, or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss.
"Unless otherwise provided by agreement in writing added hereto, and except as to any lien, mortgage, or other encumbrance specifically set forth and described in Paragraph D of this policy, this Company shall not be liable for loss or damage to any property insured hereunder while subject to any lien, or other encumbrance."

Paragraph "D" of the policy, after giving insured's occupation as a rancher, a description of the automobile, the date of its purchase as a new car, its actual cost, and that it would be used for commercial uses and kept in a private garage at Douglas, Wyoming, stated that, "The Automobile described is fully paid for by the Insured and is not mortgaged or otherwise encumbered, except as follows: Unpaid Balance, $1000.00." Paragraph "D" was captioned as "Warranted by the Insured."

The truck was totally destroyed by fire September 3rd or 4th, 1930, and at that time there was due the Harvester Company $524 still unpaid on the purchase price.

Thereafter, the agent of the Company last mentioned, at Douglas prepared a written notice to the Star Company, setting out the fact of loss of the truck and Walters, one of the plaintiffs, sent it. Subsequently and on September 19, 1930, one F. M. Andrews, who had been especially employed by the Star Company to investigate the matter, came to Douglas and talked with Walters concerning the fire. On the trial, Walters testified that Andrews then stated to him that he was there to adjust the loss and that he had endeavored to obtain a settlement; that upon being told by Walters of the mortgage to Francisco, Andrews denied any liability on the policy. Andrews testified that he did not make these statements, admitting, however, on direct examination, that he had been told by Walters of the Francisco mortgage, and on cross-examination, that he recommended a settlement of the loss to the Star Company.

On December 1, 1930, formal proof of loss was executed by the Harvester Company and thereafter submitted to the Star Company, which, on December 5 following, by its check, paid to the Harvester Company the sum of $524, the balance due it at that time under its mortgage. No proof of loss was ever made by the plaintiffs nor were any blank forms for doing so sent them by the Star Company. It is established that the value of the truck when destroyed was more than the limit of the policy of the insurance.

The defendant refused to recognize any liability to the plaintiffs under the policy aforesaid and they, accordingly, brought suit to recover the difference between the amount paid the Harvester Company and the policy limit of liability, to-wit, the sum of $476.

The pleaded defenses interposed by the Star Company were based upon alleged violations of the terms of the policy by plaintiffs and, so far as necessary to be considered on this appeal, were sufficient to present to the court the question hereinafter discussed. In due course, the issues in the cause were made up and it was then tried to the court without a jury. Under date of December 13, 1932, the judgment of which complaint is now made was entered, finding generally in favor of plaintiffs and especially that the defendant had waived written proof of loss and notice of loss as required by the policy aforesaid, and also the "question of the title involved in the case." It was adjudged that plaintiffs recover the amount sued for with their costs.

The point strongly insisted upon for the defendant is that the policy of insurance involved in the litigation was void ab initio, and this is so under the clauses thereof quoted above, directed against concealment of material facts by the insured, and against the existence of any other encumbrances on the insured property than those listed in the policy. Our attention is called to the fact established in the case beyond dispute that, at the time the insurance was assumed by the defendant, the chattel mortgage given by the plaintiffs to Francisco was in existence and of record, and that its existence was never disclosed to the defendant until after the loss of the truck occurred. This contention should be upheld if nothing else appeared in the record to render it untenable.

The Harvester Company undoubtedly acted merely as the agent of the plaintiffs in applying for the insurance for they ratified its action in so doing by repaying to it the premium collected by the defendant on the policy. We have already adverted to the fact that this instrument was issued in the name of the

plaintiffs and obviously was based upon the insurable interest held by them alone in the truck. This is made additionally clear when we consult the loss payable clause quoted above.

There are two well known provisions, one or the other of which is customarily inserted in fire insurance policies for the purpose of affording protection to a mortgagee of the property. One of these is designated as the "open-mortgage" clause and its legal effect, upon the authority of an elaborate list of cases, is thus set forth in 5 Couch on Insurance 4426, § 1215a:

"The courts are practically agreed that, under a simple loss-payable or open-mortgage clause, which, unlike the standard mortgage clause, contains no provision regarding the rights of the mortgagee in case of a breach, in a policy of insurance issued to the mortgagor, and payable to the mortgagee as his interest may appear, the mortgagee is simply an appointee of the insurance fund, whose right of recovery is no greater than the right of the mortgagor, so that a breach of the conditions of the policy by the mortgagor which would prevent a recovery by him, precludes recovery from the insurer by the mortgagee."

The other clause is ordinarily referred to as the "standard" or "union" mortgage clause and, concerning it, 26 C. J. 275, § 346, says:

"But if a new contract is made directly between the mortgagee and insurer, or a clause is added which gives to the mortgagee a separate contractual status in respect to insurer, as is the case when, instead of the 'loss payable' or 'open' mortgage clause, the policy contains the 'union mortgage clause,' providing in effect that the mortgagee shall not be prejudiced by any act or neglect of the mortgagor, subsequent breaches of condition by the mortgagor do not affect the rights of the mortgagee."

The statement of the text last cited appears to be in harmony with the long list of cases cited in its support.

In the case at bar, the mortgage clause employed is clearly of the "open" type and the mortgagee, equally with the mortgagor, was bound "subject to all the terms and conditions" of the policy. It seems likewise clear that those "terms and conditions," as quoted above, required the disclosure on the part of the insured of the fact that the Francisco mortgage was outstanding at the time the policy was written, so that the true interest of the insured in the property might correctly appear, and that the encumbrance might be listed as was the indebtedness due the Harvester Company. This disclosure was not made either by the plaintiffs or the Harvester Company. The consequences of such non-disclosure are stated by 26 C. J. 184-185, § 225, concisely thus:

"But the current of authority asserts that the policy stands avoided if there is an encumbrance not disclosed and the policy contains an express condition or requirement of disclosure, although insured had no actual knowledge of the condition; and such condition is reasonable and valid."

It is true there are decisions otherwise, as is mentioned in the text just quoted, which hold that the mere acceptance of a policy stating that the insurance is invalid if the property is encumbered does not render the policy void, but the authorities to the contrary are too numerous and too weighty to be overlooked. The defendant, then, had the right to stand upon the terms of the policy and decline to pay any loss arising under it.

To meet this situation, the plaintiffs advance the contention that by paying the Harvester Company

the amount due it, the defendant waived this right.

In considering this point, we may recall that waiver is generally defined as consisting in "the relinquishment of a known right." Words and Phrases, 3d Series, page 916 et seq.

It is evident that a party can not be held to have waived a right based upon material facts, the existence of which he did not know. It is proper to inquire, also, at this point, as to the legal consequences, flowing from payments made by insurers, of claimed losses under·open-mortgage clause policies where, prior to or at the time of such payment, they possessed knowledge of facts which could have been validly insisted upon as working an avoidance of the contracts.

We find 26 C. J. 338, § 425, states the rule governing this matter generally in the following language:

"Where the insurer, with knowledge of the breach of a condition, pays the amount of loss ascertained by appraisers into court upon an interpleader, or pays or partially pays any loss under the policy, it recognizes the policy as still in existence and must be considered to have waived its defenses, unless the policy is severable so that under the law it would be only forfeitable in part and the payment is made on the nonforfeitable portion."

In Webber v. Fidelity Lloyds of America, 271 S. W. 118, the Court of Civil Appeals of the Sixth District of the State of Texas, had before it a case involving substantially the following facts: Webber, the plaintiff and appellant, brought an action against the Fidelity Lloyds of America, the defendant and appellee, on a policy for $595 issued by the latter, insuring Webber against loss of an automobile by fire or theft and containing a stipulation that the loss, if any oc-

curred during its life, should be paid to the Dallas County State Bank, "as its interest might appear." The bank held a mortgage on the automobile. The policy had in it a clause reading:

"In consideration of a reduction in premium it is warranted by the assured that the automobile insured under this policy will be continuously equipped with a locking device known as Decker (approved by Underwriters' Laboratories, Inc., and bearing their label). The assured undertakes during the currency of this policy to use all diligence and care in maintaining the efficiency of said locking device, and in locking the automobile when leaving the same unattended."

The insured violated this stipulation and the car was stolen. The insurer, with knowledge of such violation, nevertheless paid the bank as mortgagee, $264.70, the amount owed it when the theft occurred. The action was by the owner of the car and the holder of the policy, for the sum of $330.30, the balance of the face of the policy remaining unpaid. The defendant urged the violation by the plaintiff of the stipulation requiring a specified locking device for and its maintenance and use by him on the car. The trial court sustained this contention, overlooking plaintiff's claim that the defendant had waived the violation of the stipulation when, though aware of such breach, it had nevertheless paid the bank the amount due it. But the appellate court took a different view of the matter and, in reversing the judgment rendered in defendant's favor, said in part:

"The judgment involves findings by the trial court that appellee did not waive the violation by appellant of the stipulation set out in the statement above in either of the ways charged against it. We agree that the finding that appellant was not entitled to predicate waiver he asserted on the 'proof of loss' he

made was correct, for it was not shown that such proof was made in compliance with a demand therefore by appellee (14 R. C. L. 1197; Woodward v. Ins. Co., 128 Wis. 1, 106 N. W. 681, 116 Am. St. Rep. 17; Ridgeway v. Modern Woodmen, 98 Kan. 240, 157 Pac. 1191, L. R. A. 1917A, 1062) ; but it appeared that appellee knew appellant had violated the stipulation at the time it paid the bank the part of the loss it was entitled to claim by the terms of the policy, and we think it therefore must be said, in view of the authorities, that such payment operated as a waiver by appellee of its right to complain of such violation. 14 R. C. L. 1199; 32 C. J. 1355; 26 C. J. 333; 3 Cooley's Briefs on Insurance, 2744; Ins. Co. v. Polemanakos (Tex. Comp. App.) 207 S. W. 922; Ins. Co. v. Lehman, 132 Ala. 640, 32 So. 733; Ins. Co. v. McAdoo (Tenn. Ch. App.) 57 S. W. 409.   *   *   *

"Nor can the contention that the payment did not operate as a waiver as claimed by appellant, because. it was not made to him but to the bank, be sustained. Gardner v. Ins. Co., 125 Ky. 464, 101 S. W. 908. With reference to a like contention made in the case cited, the court said:

" 'The legal effect of such a provision (that the loss should be paid to a mortgagee as his interest appeared) would be to make the mortgagee the agent of the insured to receive the payment of the insurance money due under the policy to the extent that he (the mortgagee) is interested in the property destroyed.'

"In that view the payment by appellee to the bank in legal effect was a payment to appellant; and there is no doubt, as shown by authorities we have cited, if the payment had been to him it would have operated as a waiver."

The case last cited was decided April 9, 1925. Thereafter, under another exactly similar policy of the same company, the facts were such as to once more raise the identical question of law. This time it was resolved in favor of the plaintiff by the trial court, but

the Court of Appeals for the Eighth District of Texas declined to follow the decision previously rendered by the coordinate appellate court for the Sixth District, and filed an opinion reversing the judgment below. However, on account of the conflicting views thus appearing in the subordinate appellate courts, the case was certified to the Commission of Appeals of the state. Under date of June 25, 1927, in Fidelity Lloyds of America v. Geddie, 116 Tex. 656, 296 S. W. 500, the court of final authority in the state, in the course of its opinion, among other things, said:

"The conflict with the case of Webber v. Fidelity Lloyds of America (Tex. Civ. App.) 271 S. W. 118, referred to in the certificate, and this one, should be resolved in favor of the decision in the Webber Case. The conflict is apparent, and from the certificate appears to involve the identical question ,of law. Indeed, the two policies appear to be the same.

"The fact that the policy in controversy contained a clause making the loss, if any, payable to the Mc-Farland Investment Company as its interest might appear does not in any wise alter the fact that the contract proper is between the insurance company and the owner of the property. The effect of such clause is but to name the McFarland Investment Company as the party entitled to receive payment of the fund in the event a loss becomes payable under the terms of the policy. Hamburg-Bremen Fire Ins. Co. v. Ruddell, 37 Tex. Civ. App. 30, 82 S. W. 826. The authorities generally agree upon this matter. * * * The contract therefore being with the appellee, it is only such loss as may become payable under the terms of the contract that could in any event become payable to the McFarland Investment Company. The breach by appellee of his warranty with respect to keeping his car locked when the same was left unattended constituted a complete defense to appellant, unless the same was waived by its conduct in paying the McFarland Investment Company. Now, waiver is not identical with estoppel, and there need not be

shown any act or conduct of the assured with respect thereto, since waiver is wholly the act of the insurance company. It is therefore not necessary that any consideration should appear.

"Forfeitures are not favored, and the courts will quickly seize upon any fact or circumstance reasonably evidencing an intention not to insist upon the forfeiture. There being here a single, indivisible contract, the act of appellant in paying the McFarland Investment Company was entirely inconsistent with its right, and any intention, to avoid the policy, and was consistent only with a recognition of its continuing validity notwithstanding the known existence of a ground of forfeiture. This constitutes in law a waiver of the forfeiture, to which the insurance company otherwise would have been entitled."

It was accordingly held that the appellate court for the Eighth District erred in refusing to concur with the opinion in the Webber Case excerpted above. Other decisions of similar purport are: Julian v. Commercial Assur. Co., 220 Mo. App. 115, 279 S. W. 740; Modlin v. Atlantic Fire Ins. Co., 151 N. C. 35, 65 S. E. 605; Bremen Farmers' Mut. Ins. Co. v. Ingman et al, 122 Kan. 736, 253 P. 433; British General Ins. Co., Limited, of London, England, v. Stamps et al., 57 S. W. (2d) (Tex. Civ. App.) 638; Swearingen v. Hartford Ins. Co., 52 S. C. 309, 29 S. E. 722; Michigan-Idaho Lumber Co. v. Northern Fire & Marine Ins. Co., 35 N. D. 244, 160 N. W. 130; Pfaffengut v. Export Ins. Co. of New York, 55 N. D., 112, 212 N. W. 518; Fireman's Fund Ins. Co. v. Rowland Lumber Co., 186 N. C. 269, 119 S. E. 362; Weis v. Norwich Union Fire Ins. Soc., 57 S. D. 124, 231 N. W. 292. See also 14 R. C. L. 1199, § 379.

In the case at bar, it is undeniably established that the defendant, through its agent Andrews, knew of the violation of the terms of the policy by the plain-

tiffs through the non-disclosure of the existence of the Francisco chattel mortgage on the truck at the time it paid part of the loss to the Harvester Company. Possessing this knowledge and being aware, also, of its right to decline to pay the loss at all, under the specific provisions of the insurance policy issued by it to plaintiffs, the Star Company nevertheless made that payment. Under the authorities cited above, this constituted a waiver of its right to urge such violation in defense of the instant action, and we so hold.

It is said that no notice of loss was ever made or given by the plaintiffs to the defendant, but the evidence in the record discloses that a written notice of loss was made out by the Harvester Company agent and sent out to the defendant by the plaintiff, as has already been mentioned. In addition to this, the insurer sent its agent, shortly after the fire, to investigate the loss. Under such circumstances, even if the notice transmitted be regarded as informal in character, the defendant waived the formal notice required by the policy. 26 C. J. 403; State Mutual Insurance Co. v. Green, 62 Okla. 214, 166 P. 105, L. R. A. 1917F 663. The same result must follow, also, when the fact of payment of part of the loss is considered, as discussed above. See Gleason v. Canterbury Mutual Fire Ins. Co., 73 N. H. 583, 64 A. 187.

As has been said, no proofs of loss were furnished defendant by plaintiffs as required by the terms of the policy. This fact is advanced as a defense by the Star Company, but as said in 7 Couch on Insurance 5575, § 1581, "A payment by the insurer to the insured of a part of the amount due under a policy of insurance effects a waiver of preliminary proofs of loss." See also 26 C. J. 406, § 521; Firemen's Ins. Co. v. Hays et al., 159 Ark. 162, 251 S. W. 360; 14 R. C. L. 1349, § 521. It appears likewise from the

record, as previously noted, that formal proof was furnished to the defendant by the Harvester Company, although such proof was not forthcoming until after the sixty-day period allowed by the policy to furnish the same. No objection concerning this proof appears to have been made, but on the contrary, it seems to have been accepted and certainly payment was made in accord with its claim of loss.

It is suggested that plaintiffs' amended petition was insufficient to raise the question of waiver of the conditions of the policy in suit relied on by the Star Company. We cannot agree that this is so. The amended petition in substance alleged, among other things, that the plaintiffs caused notice of loss to be served on the defendant; that the defendant, on September 19, 1930, caused to be made an investigation of the loss of the truck; and that it thereafter paid to the Harvester Company the amount due it. This, under the law as we have hereinbefore stated it, would seem a sufficient pleading of all the facts necessary to constitute a waiver of the several provisions of the policy, the breach of which is here urged as defensive matter by the insurer.

Finding no error in the record before us, the judgment should be affirmed.

*Affirmed.*

KIMBALL, C. J., and BLUME, J., concur.